CRUCIOTTI *v.* D'ANNA, Trustee, et al.

[No. 206, October Term, 1951.]

*Decided July 15, 1952.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*John E. Buccino* and *Murray MacNabb*, for appellant.

*Solomon Liss*, with whom was *Charles Cohen*, on the brief, for appellees.

MARKELL, J., delivered the opinion of the Court.

This is an appeal from a decree dismissing a bill to set aside deeds by plaintiff's wife (now deceased) and by her grantee or to enforce an alleged agreement by the decedent to convey the property in question to herself and plaintiff as tenants by the entireties.

On November 30, 1941, plaintiff, a widower, and Providenza D'Anna, a widow, were married. He was sixty and had three children; she was sixty-five and had fourteen children. The license was issued on November 19, 1941. Plaintiff's son testified that in August, 1941, he had a conversation with his father and Mrs. D'Anna, "that they were going to get married and if I liked the idea. I told them it was all right by me, because she seemed to be a very nice woman. * * *, she did not give me any date of the marriage because they had a little disturbance with the children and said it had been postponed until later." On November 8, 1941, Mrs. D'Anna conveyed to Straw Man Inc. the leasehold property No. 124 W. Camden Street, (where she lived) and the grantee reconveyed it to Frank D'Anna (one of her sons) in trust for her for life, with power to her with the trustee's consent to sell and reinvest the proceeds, and to the trustee upon her death to sell and distribute the proceeds among the fourteen children and the descendents of deceased children *per stirpes.* The wife died on February 16, 1951; controversy ensued immediately.

Plaintiff testified (without objection) that he found out "two years after the marriage", that Mrs. D'Anna had conveyed the house to her children. However, he also testified, "After she buys her house for her children, I bought my house [No. 646 Dumbarton Avenue] for

my own children." One of his wife's brothers testified that plaintiff was present in his wife's house when she executed the deed on November 8, 1941. He testified, on cross-examination, "Q. * * * you were at Camden Street in 1941, were you not, when the deed was signed, November 8, 1941? A. I don't know when they were signed or not signed. Q. Do you recall in November, 1941, when a lawyer came down to your wife's place on Camden Street and that she signed a deed. A. I don't remember. No lawyer came there." This is denial of recollection of an inconclusive detail, not denial of knowledge of the execution of the deed. On February 1, 1943 the leasehold property No. 646 Dumbarton Avenue, bought by plaintiff for $4,250 ($3,750 cash and $500 on mortgage), was conveyed to plaintiff. On June 1, 1944 he redeemed the $86 ground rent, and on April 30, 1947 by conveyances to and from Frank D'Anna and wife conveyed it to himself and wife as tenants by the entireties. After the wife's death the trustee sold the Camden Street property to his son (or himself) for $11,200.

Plaintiff contends that after learning of his ownership of No. 646 Dumbarton Avenue his wife agreed with him that if he would "put her name on his property" she would put his name on hers, No. 124 West Camden Street, that in accordance with this agreement he did so convey his property but she had failed to convey hers. He testified, mostly without objection, "Q. How did you find out that your name was not on the property on Camden Street? A. About three days after her death, I went to see Buccino [his lawyer] and he told me—Objected to —that my name was not on it."

Plaintiff contends (1) that the deeds of November 8, 1941 were executed in fraud of his marital rights and should be set aside and (2) that the wife's agreement to "put his name on her property" should be specifically enforced.

At the close of the testimony Judge Tucker, who saw and heard the witnesses testify, delivered a clear

and careful oral opinion, in which he reviewed plaintiff's contentions more fully than we find it necessary to do.

Judge Tucker expressed the opinion that provision by Mrs. D'Anna for her fourteen children, on the eve of her marriage, "was a rather natural thing to do", and that the deed did not so reserve dominion over the property as to amount to a fraud on plaintiff's marital rights. He also said that "if he [plaintiff] did know of it [the deed, when it was executed], of course there cannot be any fraud whatsoever." On this point he said, "* * * there is a decided conflict in his testimony. I think when you consider that along with the testimony on the defendants' side that he was present when this deed of trust was made, that the weight of the evidence would support the testimony given by the defendants' witnesses." As we do not differ with Judge Tucker as to the weight of the evidence in this respect, it is unnecessary to discuss any question of law that might be presented if the weight of the evidence were otherwise. This marriage was not a clandestine union. In August, 1941, it was discussed by both parties with plaintiff's son, and he was informed that "they had a little disturbance with the children and said it had to be postponed until later". The natural way to allay such a "disturbance", would be to secure the property to the children. Peter D'Anna, who testified that plaintiff was present when the deed was executed, testified that plaintiff disclaimed mercenary motives, saying, "I only want to be a companion to your mother", and "I know the house belonged to you children", and Mrs. D'Anna said, "Well, we will turn it over to the fourteen children", and he said "all right, turn it over to the fourteen children". Plaintiff's subsequent conduct is more consistent with this version of the deed than with his own version.

With respect to plaintiff's second contention, Judge Tucker's conclusion, after reviewing the evidence was, "So, in my opinion, she never did agree to put his name on the Camden Street property." Plaintiff's contention was based on testimony of his son, who lived in Columbus

and visited his father once or twice a year. He testified to an alleged conversation with plaintiff and his step-mother early in 1947. On cross-examination the son admitted that some statements by plaintiff had not been made in this conversation with his wife, but in a letter to his son. Judge Tucker rightly regarded this circumstance as weakening the son's testimony, and also said, "Another significant thing about his testimony is this: It indicates the step-mother's assurance that if the father would put her name on the Dumbarton Avenue property, she and her family would take care of him, and the son could go back to Columbus, Ohio, and not worry. From this it would seem that the consideration for the father's act was that he would be taken care of, and not that the step-mother would put her property in both names."

There is no evidence—and no presumption (*Owings v. Currier*, 186 Md. 590, 596, 603, 47 A. 2d 743)—that before or after his second marriage, plaintiff was under the domination of his wife.

Plaintiff's two contentions are each improbable and together are more improbable than either would be separately. We agree with Judge Tucker that the second contention was "not proved" and the first was disproved.

*Decree affirmed, with costs.*